Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Plaintiff*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 20-397-ELG |
| | ) | |
| ETS of Washington LLC, | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | ) | |
| DP Capital LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10007 |
| | ) | |
| v. | ) | |
| | ) | |
| The District of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |

**OPPOSITION TO DISTRICT OF COLUMBIA'S
MOTION TO DISMISS SECURED CREDITOR DP CAPITAL
LLC'S COMPLAINT AND ADVERSARY PROCEEDING WITH PREJUDICE**

Comes now DP Capital LLC ("DPCL" or the "Plaintiff"), by and through undersigned counsel, pursuant to Local Rule 9013-1, and in opposition to the District of Columbia's Motion to Dismiss Secured Creditor DP Capital LLC's Complaint and Adversary Proceeding with Prejudice (the "Motion," as found at DE #5), filed by the District of Columbia (the "District of Columbia" or the "Defendant"), states as follows:

1

I.     **Introduction**

Seemingly undesirous of answering for a factually and legally erroneous levy on a parcel of property on Foxhall Road (the "Property"), the District of Columbia is attempting to deflect this case by asserting (i) improper service of process; (ii) fault to lie solely with a debtor and trustee; and (iii) an absence of standing. Yet service of process was properly made in this case, as evidenced by the attached declaration of Jay S. Bump of BK Attorney Services, LLC, an approved third party notice provider. Similarly, while there can be little question but that the former debtor-in-possession navigated this case in an oft-haphazard, imbecilic, and periodically-dishonest fashion, such is of no moment to the factual and legal issues *sub judice*, much less reason to dispense of this case on a motion to dismiss. And, equally, while the District of Columbia is certainly correct that a debtor-in-possession and ensuing trustee are uniquely vested with the prosecution of monetary claims constituting assets of a debtor's estate, there exists palpable daylight between those discreet limitations and the broader jurisdictional reaches of a party in interest seeking declaratory relief.

At core, the Motion only raises two questions: (i) whether the District of Columbia properly served; and (ii) whether DPCL has standing to pursue this litigation. The former is a factual inquiry properly answered in the affirmative. The latter is a legal inquiry, also answered in the affirmative. For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

II.     **Argument**

    a.   **Service Was Properly Made Upon the District of Columbia**

The first argument raised by the Motion is perhaps the simplest, as there does not appear to be any disagreement between the Plaintiff and the District of Columbia as to what is required to effectuate service of process. The disagreement, rather, is solely one of whether or not DPCL

2

actually did what the Plaintiff's undersigned counsel affirmed, in a certificate of service, DE #4, to have done. Fortunately, such service was accomplished in a well-evidenced manner.

The Federal Rules of Bankruptcy Procedure provide, *inter alia*, that a "municipal corporation or other government organization" is to be served:

> . . . by mailing a copy of the summons and complaint to the person or office upon whom process is prescribed to be served by the law of the state in which service is made when an action is brought against such a defendant in the courts of general jurisdiction of that state, or in the absence of the designation of any such person or office by state law, then to the chief executive officer thereof.

Fed. R. Bankr. P. 7004(b)(6).

The District of Columbia Rules of Civil Procedure, in turn, provide that when suit is brought against the local government:

> The District of Columbia must be served by delivering (pursuant to Rule 4(c)(2)-(3)) or mailing (pursuant to Rule 4(c)(4)) a copy of the summons, complaint, Initial Order, any addendum to that order, and any other order directed by the court to the parties at the time of filing to the Mayor of the District of Columbia (or designee) and the Attorney General of the District of Columbia (or designee).

D.C. Super. Ct. R. Civ. P. 4(j).

On March 8, 2024, both the summons and complaint herein "were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon" for delivery to the Mayor of the District of Columbia and the Attorney General of the District of Columbia. *See* Declaration of J. Bump, attached hereto as Exhibit A.

As noted by the United States Bankruptcy Court for the District of Arizona, "[t]he plain language of Rule 7004(b)(1) indicates that service is complete upon such mailing. There is no requirement that the summons and complaint actually be received." *In re Safadi*, 431 B.R. 478, 481 (Bankr. D. Ariz. 2010). *See also In re Outboard Marine Corp.*, 359 B.R. 893, 898 (Bankr. N.D. Ill. 2007) (. . . under Bankruptcy Rule 9006(e), upon mailing, service is complete.") (citing *Turgeon v. Victoria Station Inc. (In re Victoria Station Inc.)*, 840 F.2d 682, 684 (9th Cir. 1988)).

3

Accordingly, whether or not the District of Columbia actually received either of the two parcels is immaterial to analysis of proper service. And while the notion that both the mayor and the attorney general lack a sufficient system for opening and sorting mail certainly does not bode well for the city in a suit that challenges, in part, the city's operational awareness, such is instantly of no moment.

Moreover, the disingenuity of this argument bears notation. Not only does the District of Columbia suggest error to underlie a signed certificate of service but, more concerningly, the Defendant feigns to have "only learned of the Secured Creditor's filing an Adversary Proceeding against the District from a telephone call." Motion, DE #5, at ¶ 12. Yet this contention is suspect; the District of Columbia is on the ECF service list in the above-captioned bankruptcy case and thusly received direct and actual notice of this adversary proceeding's commencement at the very moment the complaint was docketed in the main case. *See* ECF Confirmation E-mail, attached hereto as Exhibit B, at p. 2.

There is a near-uniform tension that underlies almost all pre-default motions seeking dismissal on the basis of improper service, insofar as a party must be on notice of a case to file such a motion and, as such, must have received – through one means or another – all the information meant to be conveyed through proper service of process. Such attacks too often assume the outward façade of gamesmanship, portraying all the ethos of a malfeasant whose days are spent artfully evading the hot trail of process servers. It is altogether unclear why the District of Columbia would elect such a tact here. But, in any event, the contention is sufficiently countervailed as to invite denial.

### b. It is Unclear What the District Argues Vis a Vis the Debtor's Negligence

The District of Columbia focusses on the "negligence" of the former debtor-in-possession, ETS of Washington LLC (the "Debtor"). Motion, DE #5, at ¶ 17. Tellingly, the Defendant acknowledges that the Debtor "should have … contest[ed] the Class 4 determination," *Id.* at ¶ 19, seemingly acknowledging – at least inferentially – that the subject Class 4 determination would be unlikely to withstand a challenge. Yet, the District of Columbia posits, because the Debtor took no action, and because the Chapter 7 trustee subsequently appointed also took no action, there is now nothing to be done. The Defendant may be right about the Debtor's negligence, and there can be little question but that this case was oft-punctuated by the Chapter 7 trustee's inaction, but the legal import, *vel non*, of these contentions is unclear.

Section IV(B) of the Motion properly recites that a debtor-in-possession is charged with the operation of its own business. And Section IV(B) also lays out the procedure for contesting a tax determination under District of Columbia law. But that section never speaks to why the Debtor's failures preclude declaratory judgment establishing that (i) an action in violation of Section 362 of Title 11 of the United States Code is void; and (ii) an action in violation of the doctrine set forth in *Barton v. Barbour* is void. Nor does Section IV(B) posit an argument as to why this Honorable Court is not statutorily permitted to exercise the tax review powers bestowed by Congress.

This portion of the Motion is frustrating because, quite genuinely, the text appears to be a wholesale non sequitur. DPCL has brought suit premised upon the District of Columbia misapplying its own tax standards, violating federal statutory law, and violating federal case law. The District of Columbia, in turn, is suggesting that the Debtor was a poorly operated entity. Such

5

may well be (DPCL is not anytime soon coming to the defense of the Debtor in this case), but the relevance of the contention is at-best unclear in a rather genuine "*quid ergo*" manner.

### c. DPCL Has Standing to Seek Declaratory Relief

The Defendant's core argument is that only the Debtor – or the trustee – has standing to assert claims belonging to the estate. The contention is accurate in a limited context; the Plaintiff certainly would not be free to pursue claims for which it has no independent standing, merely because the Debtor sought bankruptcy relief. But insofar as DPCL is very much a party in interest, and satisfies each rigor of Article III standing and prudential standing, DPCL is permitted to utilize the tools of Title 11 of the United States Code (the "Bankruptcy Code") to seek relief in this action.

### i. There Exists a Cognizable Case or Controversy

In assessing standing, the first inquiry is whether or not there exists a case or controversy through which DPCL has suffered – or is likely to suffer – an injury sufficient to seek judicial relief. Here, that inquiry is handily answered in the affirmative insofar as the District of Columbia is endeavoring to levy an unlawful *in rem* tax upon the Property. Since DPCL has been granted stay relief by this Honorable Court, has conducted a foreclosure auction for the Property in accord with said stay relief, was the high bidder at that auction, and stands ready to record a deed upon resolution of this action, the constitutional rigor is well satisfied.

As noted by the United States Court of Appeals for the District of Columbia Circuit, "[f]or constitutional standing under Article III, a party must show it has suffered an injury that is actual, imminent, or certainly impending. On the other hand, a 'speculative' possibility of future injury does not suffice." *Viasat, Inc. v. Fed. Commc'ns Comm'n*, 47 F.4th 769, 778–79 (D.C. Cir. 2022) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 583–84 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). In the words of the Supreme Court of the United States:

> From Article III's limitation of the judicial power to resolving "Cases" and "Controversies," and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the "irreducible constitutional minimum of standing." The plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision. Lexmark does not deny that Static Control's allegations of lost sales and damage to its business reputation give it standing under Article III to press its false-advertising claim, and we are satisfied that they do.

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan*, 504 U.S. at 560).

Here, DPCL alleges the District of Columbia has illegally charged a tax, in excess of $250,000.00 over and above what should be levied, on an asset owned by the Debtor and subject to the lien of DPCL. The District of Columbia's tax creates a senior lien on the Property, D.C. Code § 47-1312(a-1), thereby eroding from above the lien of DPCL. It is accordingly manifest that the injury to DPCL, suffered at the hands of the District of Columbia, is "actual" and not merely "speculative," *Viasat*, 47 F.4th at 778, while also being "concrete" and "particularized" in nature, *Lexmark*, 572 U.S. at 125.

Moreover, the levying of the illegal tax is "fairly traceable," *Id.* at 125, to the District of Columbia. There can be little question but that municipal taxes in the District of Columbia are levied by the District of Columbia. And while the city does try to deflect the causal nexus in its Motion, asserting the taxes to be the fault of a notoriously-unscrupulous former debtor-in-possession, the failure of the Debtor to competently fend off an unlawful tax does not displace from the local government the obligation to answer for levying that forbade duty in the first instance.

Equally, it is manifest that a ruling in favor of DPCL would be "likely to . . . redress[]," *Id.* at 125, the harms complained of *sub judice*. The core legal theories of this case are that (i) the tax levied by the District of Columbia is void, being a violation of Section 362 of the Bankruptcy Code; (ii) the same tax is improper and thusly reviewable pursuant to Section 505 of the Bankruptcy Code; and (iii) the same tax was assessed in contravention of *Barton* doctrine. A favorable ruling on any of the three theories would reduce the collectible taxes burdening the interests of DPCL and, as such, reduce the economic liabilities to be assumed by DPCL (or its assignee) in taking title to the Property.

### ii. DPCL Has Prudential Standing

In addition to demonstrating constitutional standing, DPCL must also show the existence of so-called "prudential" standing. While the District of Columbia never invokes that precise verbiage in its Motion, a good faith reading suggests this to be the doctrine upon which the municipality relies in arguing only the Debtor or trustee would have standing to bring this case. To the extent this is, indeed, the assertion of the District of Columbia, the contention is misplaced.

As this Honorable Court has explained, "[t]he doctrine of prudential standing sets forth three broad principles including: the prohibition of allowing parties to raise the rights of a third-party, prohibition in hearing cases of generalized grievances, and the requirement that the harm be within the zone of interests protected by a statute." *In re Shelton Fed. Grp., LLC*, 2018 WL 4468331, at *2 (Bankr. D.D.C. Aug. 21, 2018) (citing *Lexmark*, 572 U.S. 118). *See also In re Stanworth*, 543 B.R. 760, 769 (Bankr. E.D. Va. 2016) (setting forth the criteria of prudential standing).

As to the first element of prudential standing, the right to complain of a violation of Section 362 of the Bankruptcy Code is vested in *all* creditors impacted by the alleged violation – not merely

a debtor or trustee. *See, e.g.*, *In re Rice*, 462 B.R. 651, 658 (B.A.P. 6th Cir. 2011) ("'[A]lthough only a trustee has standing to 'avoid' a transfer, an act taken in violation of the automatic stay is void and without effect....' [A]ny party with a cognizable interest in the subject property whose interests have been harmed by the act is within the zone of interests protected by [§ 362] and has the requisite standing to obtain a declaratory judgment under Bankruptcy Rule 7001.") (quoting *In re Howard*, 391 B.R. 511, 515 (Bankr. N.D. Ga. 2008)).

There can be little question but that DPCL has a "cognizable interest in the subject property" in this case. Not only does DPCL hold a deed of trust on the Property (a literal legal interest therein) but, as noted *passim*, DPCL has conducted a foreclosure auction upon the Property and was therein the high bidder. It would defy reason to suggest DPCL does not have a "cognizable interest" in the asset.

Similarly, the issues in this case cannot be fairly understood to fall within the forbade realm of "generalized grievances." Overcoming this threshold requires showing "some type of identifiable harm" not broadly visited upon the population at large. *Roberts v. Bassett*, 2022 WL 785167, at *6 (E.D.N.Y. Mar. 15, 2022) (citing *Evans v. Port Auth. of N.Y. & N.J.*, 2017 WL 3396444, at *5-6 (E.D.N.Y. Aug. 8, 2017); *Credico v. N.Y. State Bd. of Elections*, 2013 WL 3990784, at *8-*9 (E.D.N.Y. Aug. 5, 2013); *Youth Alive v. Hauppauge Sch. Dist.*, 2012 WL 4891561, at *3 (E.D.N.Y. Oct. 15, 2012)). Suffice it to posit that an illegal tax being imposed on the Property may impact the Debtor, and certainly impacts DPCL, but such does not broadly reach such a vast swath of the population as to render "general" the grievances set forth in the case. The universe of persons (real and natural) impacted by the issue *sub judice* is almost assuredly countable upon one hand; as noted *supra*, DPCL has a precise, cognizable monetary interest in the subject tax. This is not a suit where DPCL feigns to invoke "taxpayer" standing or to carry the

9

torch of "concerned citizens;" this is a case where DPCL is attacking the taxes charged on an asset subject to DPCL's own lien.

This leaves only the question of whether or not DPCL falls within the "zone of interests" protected by the Bankruptcy Code and the *Barton* doctrine. As observed above, the *Rice* Court and others have found violations of Section 362 of the Bankruptcy Code to invite "zone of interests" standing on the part of any creditor holding a discernable interest in the asset(s) implicated by the stay violation. So it is clear DPCL has standing to pursue the cause of action seeking a declaration as to the void nature of actions in contravention of the automatic stay, even if the trustee (and other impacted parties) may, too, possess comparable rights to initiate litigation.

Similarly, in connection with the Section 505 claim, "[t]he case law supports the broad grant of standing embodied in § 505(a)." *In re Huddleston*, 1994 WL 764193, at *5 (Bankr. W.D. La. Dec. 2, 1994) (citing *In re Brandt–Airflex Corp.*, 69 B.R. 701, 706 (Bankr. E.D.N.Y. 1987)). Determining a debtor's tax obligation has a necessary impact on the creditor body of any case, especially upon the rights of secured creditors holding liens junior to those of taxing authorities. The law generally supports the standing of a lienholder to seek declaratory relief, *Brite Fin. Servs., LLC v. Bobby's Towing Serv., LLC*, 461 F. Supp. 3d 549, 556 (E.D. Mich. 2020), just as precedent supports creditors seeking declaratory relief in bankruptcy proceedings, *In re Carter*, 586 B.R. 360, 365 (Bankr. M.D. Ga. 2018); *Matter of Clark*, 207 B.R. 559, 565 (Bankr. S.D. Ohio 1997); *In re Cass*, 2013 WL 1459272, at *8 (B.A.P. 9th Cir. Apr. 11, 2013). Moreover, a Section 505 claim is not a monetary asset of a debtor at the time a bankruptcy estate is created but, rather, is a mechanism provided for under the Bankruptcy Code, to be utilized in sorting out the claims of various stakeholders.

Nothing in Section 505 suggests the tool being exclusively reserved for utilization by a debtor-in-possession or trustee, and Congress clearly knows how to use such limiting language when desired. *Compare* 11 U.S.C. § 505(a)(1) (". . . **the court may** determine the amount or legality of any tax, any fine or penalty relating to a tax. . .") (emphasis added) *with* 11 U.S.C. § 547(b) (". . . **the trustee may** . . . avoid any transfer of an interest of the debtor in property. . .") (emphasis added); *and* 11 U.S.C. § 548(a)(1) ("**The trustee may** avoid any transfer. . .") (emphasis added); *and* 11 U.S.C. § 545 ("**The trustee may** avoid the fixing of a statutory lien on property of the debtor. . .") (emphasis added). By vesting this power in this Honorable Court and its sister courts, as opposed to in trustees (and debtors-in-possession), Congress evinced a desire to make the utility available to any party in interest that otherwise possesses the requisite standing; had Congress wished to limit this right to trustees and debtors-in-possession, Congress would have provided for such limitations in the statutory language.

The final inquiry is thusly whether or not DPCL is in the "zone of interests" to seek a declaratory judgment concerning a violation of the *Barton* doctrine. Plainly, DPCL's interest in the Property places the Plaintiff in the requisite "zone of interests," since a declaration concerning violation of the *Barton* doctrine is needed to ascertain the scope, *vel non*, of taxes owed on an asset of the Debtor that is subject to the lien of DPCL.

Actions in contravention of the *Barton* doctrine are void – not merely voidable. *See, e.g.*, *In re Trafford Distrib. Ctr., Inc.*, 520 B.R. 147, 156 (Bankr. S.D. Fla. 2014) (". . .cases filed in violation of the Barton doctrine are void *ab initio*."); *In re Summit Metals, Inc.*, 477 B.R. 484, 503 (Bankr. D. Del. 2012) ("In sum, the Complaint is void *ab initio* for violation of the Barton doctrine and will be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)."); *In re Lickman*, 301 B.R. 739, 746 (Bankr. M.D. Fla. 2003) (". . . the Debtor's filing of the Pennsylvania

11

damages action violated the automatic stay and the Barton doctrine and was therefore void.") (citing In re Lickman, 297 B.R. 162, 192 (Bankr. M.D. Fla. 2003)); *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 774 (S.D.N.Y. 2015) (discussing the "general rule" that actions in contravention of the *Barton* doctrine are void).

What the District of Columbia seems to miss is that DPCL is not seeking damages from the city for violating the *Barton* doctrine or the automatic stay set forth in Section 362 of the Bankruptcy Code; DPCL is suing the city to establish the legal ramifications of the municipality's violation of the *Barton* doctrine and stay. This is not an action for money damages, this case does not sound in tort, and DPCL feigns no entitlement to collect punitive compensation. This is, rather, a case directed at ascertaining the legal implications of the District of Columbia's unlawful actions, through the statutory framework of Section 2201 of Title 28 of the United States Code. And insofar as those unlawful actions have a direct and profound impact upon DPCL's property interests, DPCL most certainly has both constitutional and prudential standing to proceed.

### d. This is Not an Action for Damages

The District of Columbia's final contention – which overlaps, nearly entirely, with the city's standing argument – is that DPCL cannot exercise the rights of the Debtor to bring suit, since those rights were formerly held by the debtor-in-possession and are now exclusively vested in the trustee. This argument appears to be an effort to extrapolate certain very narrow statutory limitations into a broad doctrine whereby the filing of a petition for bankruptcy relief divests creditors and parties in interest of an enormous quantity of litigation rights. Governing law does not support this expansive theory.

To be sure, precedent makes clear that "only a trustee in bankruptcy or a debtor-in-possession could request relief under the fraudulent conveyance provisions of § 548 of the

Bankruptcy Code." *In re Anton Motors, Inc.*, 177 B.R. 58, 68 (Bankr. D. Md. 1995) (citing *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 512 (N.D. Ill. 1988)). *See also*, *In re Van Brock*, 33 B.R. 546, 547 (Bankr. S.D. Fla. 1983) (holding that only a trustee or debtor-in-possession may bring a Section 548 claim). Similarly, "Section 544(b) also specifically authorizes only the 'trustee' to bring the avoidance actions described therein on behalf of the estate." *In re Railworks Corp.*, 325 B.R. 709, 714 (Bankr. D. Md. 2005). And a trustee's reach extends to *all* wrongful transfer claims held by creditors. *See, e.g.*, *In re Berg*, 376 B.R. 303, 310–11 (Bankr. D. Kan. 2007) ("[I]f any unsecured creditor could reach an asset of the debtor outside bankruptcy, the Trustee can use § 544(b) to obtain that asset for the estate. As part of the estate, that asset is then divided among all unsecured creditors, not just the creditor who could have reached the asset outside bankruptcy.") (quoting *In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997)).

Yet this is not an avoidance action brought under Section 544, 545, 547, 548, or 549 of the Bankruptcy Code. Not is this a tort or contract action brought to liquidate the litigation rights of the Debtor that form a part of the estate under Section 541 of the Bankruptcy Code. This is, rather, an action for declaratory relief, stemming from the unlawful actions of the District of Columbia committed *during* the pendency of the above-captioned bankruptcy proceeding. The rights DPCL seeks to declare are its own; judgment in this action will not preclude the trustee from bringing his own action for damages stemming from the city's violation of the automatic stay. Moreover, the trustee is free to intervene in this action if he so wishes (notably, the District of Columbia has not argued that he is a necessary party). But the fact that he holds comparable rights does not preclude DPCL from exercising its own rights.

### III. Conclusion

The District of Columbia ran roughshod over the automatic stay, openly violated the *Barton* doctrine, and levied a tax that the city, itself, now acknowledges should have been contested. In so doing, the Defendant created a paradigm whereby the rights and obligations of not merely the Debtor but, too, DPCL are in need of adjudication. This suit has been thusly properly filed (and properly served), and it is now appropriate to permit this suit to proceed into discovery so an adjudication on the merits may be had.

WHEREFORE, DPCL respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 8, 2024    By:    /s/ Maurice B. VerStandig
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of April, 2024, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig