```
 1                      UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF COLUMBIA
 2
        In Re:                      .  Case No. 20-00397-ELG
 3                                  .  Chapter 7
        ETS OF WASHINGTON, LLC,     .
 4                                  .  Washington, D.C.
                    Debtor.         .  June 18, 2024
 5       . . . . . . . . . . . . .  .
        DP CAPITAL LLC,             .  Adv. Proc. 24-10007-ELG
 6                                  .
                    Plaintiff,      .
 7                                  .
        -against-                   .
 8                                  .
        DISTRICT OF COLUMBIA,       .
 9                                  .
                    Defendant.      .
10      **************************  .

11                  MOTION TO DISMISS ADVERSARY PROCEEDING
                    BEFORE HONORABLE ELIZABETH L. GUNN
12                    UNITED STATES BANKRUPTCY JUDGE

13      APPEARANCES:

14      For the Plaintiff:       The VerStandig Law Firm, LLC
                                 By: MAURICE VANSTANDIG, ESQ.
15                               1452 West Horizon Ridge Parkway
                                 Suite 655
16                               Henderson, Virginia 89012

17      For the Defendant:       Office of the Attorney General for
                                 the District of Columbia
18                               By: NANCY L. ALPER, ESQ.
                                     ANDREW A. GLOVER, ESQ.
19                                   STEPHON D. WOODS, ESQ.
                                 4006 6th Street, N.W.
20                               9th Floor
                                 Washington, District Of Columbia
21                               20001

22

23

24
        Proceedings recorded by electronic sound recording.
25      Transcript produced by transcription service.
```



1          (Proceedings commenced at 10:41 a.m.)

2          THE CLERK:  On today's calendar we have case Number

3  24-10007, DP Capital, LLC versus the District of Columbia.

4  Matter before the Court is the motion to dismiss the adversary

5  proceeding filed by the District of Columbia.

6          Will the parties please state your name for

7  appearances?

8          MR. VERSTANDIG:  Good morning, Your Honor.  Maurice

9  VerStandig on behalf of DP Capital, LLC.

10          THE COURT:  Good morning.

11          MS. ALPER:  Good morning, Your Honor.  Nancy Alper on

12  behalf of the District of Columbia.  And with me today is

13  Andrew Glover.  He's kind of in the shadows.

14          THE COURT:  Oh, there he is.  Hello.

15          MR. GLOVER:  Good morning, Your Honor.

16          MS. ALPER:  He's with the land acquisition and

17  bankruptcy section.

18          And then Stephon Woods, who you've had the pleasure to

19  meet before, he's in observing capacity here.

20          And I just wanted to correct.  I'm sorry.  I think

21  that Ms. Matthews said that the District of Columbia filed this

22  adversary.  I may --

23          THE COURT:  I think she said the motion to dismiss the

24  adversary which would be --

25          MS. ALPER:  Oh, okay.  All right.



| | |
|---|---|
| 1 | THE COURT:  That's generally -- |
| 2 | MS. ALPER:  Okay, sorry. |
| 3 | THE COURT:  That's all right.  Are we ready to proceed |
| 4 | today? |
| 5 | MS. ALPER:  Yes, Your Honor. |
| 6 | THE COURT:  Mr. VerStandig, you're ready?  Yes.  Okay. |
| 7 | All right.  Ms. Alper, it's your motion.  So we'll |
| 8 | hear from the District first. |
| 9 | MS. ALPER:  Okay.  So again, Your Honor, good morning. |
| 10 | And I've just made the introductions to my colleagues here. |
| 11 | So, Your Honor, the background and timeline in this |
| 12 | adversary proceeding is that for approximately four months in |
| 13 | the main bankruptcy case from January 1, 2021 until the Court |
| 14 | issued its order on May 4, 2021, the secured creditor attempted |
| 15 | to obtain an order from the Court to lift the automatic stay in |
| 16 | order to allow the secured creditor, DP Capital, LLC, which I |
| 17 | will refer to as secured creditor hereof -- |
| 18 | THE COURT:  Okay. |
| 19 | MS. ALPER:  -- here and after, to foreclose on the |
| 20 | property.  And, excuse me, Your Honor.  And in that order, |
| 21 | which appears at -- in the main case at docket number 100, the |
| 22 | Court did issue an order granting the secured creditor's motion |
| 23 | to lift the automatic stay.  And the Court in the order also |
| 24 | authorized the secured creditor to, quote, pursue any and all |
| 25 | remedies against the property.  That is 2207 Foxhall Road |

1     Northwest, Washington, DC.  And again, I will refer to that as

2     the property.

3          And as the secured creditor stated in its opposition

4     to the District's motion to dismiss, it followed the Court's

5     ruling.  And once the automatic stay was lifted, the secured

6     creditor conducted a foreclosure auction and was the highest

7     bidder, thereby obtaining legal title to the property.  As the

8     secured creditor declared in its opposition to the District's

9     motion to dismiss.  It has, quote, a literal legal interest in

10    the property, end quote, and therefore, quote, a cognizable

11    interest in the property, end quote.

12          THE COURT:  Well, let me walk you back.

13          MS. ALPER:  Yeah, yeah.

14          THE COURT:  Because you say the foreclosure auction

15    resulted in legal title.  Isn't it a two-step process

16    foreclosure auction, determine the highest bidder.  And then

17    there has to be a docketing of a deed to transfer legal title.

18    Can you -- and I noted that this was a key point in your reply

19    brief as well but that it was just assumed that completion of

20    the foreclosure auction is -- made a transfer of legal title.

21    And that's somewhat contrary to what we see in many of these --

22    many cases where a debtor files after an auction but before a

23    deed is docketed and they claim they still have legal title and

24    therefore there's jurisdiction.  So I would love you to walk me

25    through that analysis how foreclosure auction equals legal

1    title.

2            MS. ALPER:   Actually, Your Honor, I was going to get

3    to that point, that issue because the secured creditor does

4    argue that because it has not recorded its deed from the

5    foreclosure, that it did not record the deed from the

6    foreclosure with the District of Columbia Recorder of Deeds,

7    that the Debtor continues to hold title to the property which

8    renders the property an asset of the Debtor's estate.

9            And first, Your Honor, the secured creditor's

10   understanding and statements regarding the status of the

11   property are contrary to basic real estate law.  So Section 7.1

12   of the Restatement Third of Property Law provides it is -- and

13   I'm quoting here, it is a fundamental principle of mortgage law

14   that a valid foreclosure of a mortgage terminates the owner's

15   title and equitable redemption rights.  A purchaser at a

16   foreclosure sale not only acquires the previous owner's

17   interest in the real estate but a title free and clear of all

18   other property joint interests -- I'm sorry, properly joined

19   interests that were junior to the foreclosed lien.

20   Accordingly, Your Honor, by foreclosing on the property, the

21   secured creditor extinguished the rights, title, and interest

22   of the Debtor in the property and became the legal owner of the

23   property.

24            And second, Your Honor, not recording the foreclosure

25   with -- the deed from the foreclosure with the District of



1    Columbia recorder of deeds does not result in the debtor,

2    quote, continuing to hold title to the property and thereby

3    rendering the property an asset of the Debtor's estate.

4        THE COURT:  So how would your -- how would your office

5    or the Office of the Taxation be on notice of who the winning

6    bidder was unless there's a deed recorded?  I mean, who are

7    they issuing current tax bills to?  Are they being issued to DP

8    Capital, or do they continue to be issued to the party that is

9    listed on the title?

10        MS. ALPER:  One minute, Your Honor.

11        THE COURT:  That's fine.  Obviously, this is just for

12    purposes of discussion.  I'm not taking any evidence.  But

13    given that you have your expert there, I figured it was a fair

14    question.

15        MS. ALPER:  All right.  So, Your Honor, Mr. Glover

16    deals a lot with foreclosures in the District of Columbia.  And

17    what occurs is that once the -- there is a foreclosure, that

18    the property then belongs to the entity that was the -- in this

19    case, the winning bidder of the foreclosure auction.

20        THE COURT:  Well, right.  And I think what we're

21    having a problem with is the definition of foreclosure.  Is the

22    definition of foreclosure simply conducting the auction, or is

23    the definition of foreclosure conducting the auction and

24    recording a deed accordingly thereto?  Because I think there's

25    an important distinction.  And I'm trying to determine the

1    District's argument as to the definition of the word

2    "foreclosure" here.

3          MS. ALPER:  One minute, Your Honor.  Sorry.

4          So, Your Honor, they foreclosed -- they have title in

5    the property that they just did not put the world on notice of

6    that.  And I will get to some of the law in this momentarily,

7    if I may continue.

8          THE COURT:  Go ahead.

9          MS. ALPER:  Okay.  Thank you.  Oh, geez.  Hold on a

10    minute.

11          So, Your Honor, second, not recording the foreclosure

12    with the District of Columbia Recorder of Deeds does not result

13    in the Debtor continuing to hold title to the property and

14    thereby rendering the property an asset of the debtor's estate.

15    Again, the foreclosure itself on the property results in

16    extinguishing rights, title, and interest of the owner in the

17    property and transferring those rights, title, and interest of

18    the property to the entity that foreclosed on the property, in

19    this case, the secured creditor.  District law requires that

20    within thirty days of execution of a deed or document by which

21    legal title to real property is transferred, the transferee

22    must record a copy of the deed with the District of Columbia

23    Recorder of Deeds.

24          And DC Official code Section 47-1431 states within

25    thirty days after the execution of a deed or other document by

1    which legal title to real property transfers, all transferees

2    of and all holders of the security interests in real property

3    shall record a fully acknowledged copy of the deed or other

4    document, including the lot and square number of the real

5    property transferred or encumbered with the Recorder of Deeds

6    of the District of Columbia.

7              THE COURT:  But didn't Judge Teal uphold the existence

8    of a pocket deed in previous cases that even though it wasn't

9    recorded, he didn't find that it was an invalid issue?  So, I

10   mean, while there's that requirement, hasn't this court, at

11   least, Judge Teal in previous opinions, nonetheless held that

12   unrecorded pocket deeds retained some sort of effect between

13   the parties?

14             MS. ALPER:  Well, Your Honor, under District of

15   Columbia law, as the District of Columbia Court of Appeals

16   stated in Rose v. Wells Fargo Bank, 73 A.3d 1047, quote, the

17   recordation process is designed to protect a property interest

18   against subsequent bona fide purchasers the risk of property

19   holder takes by failing to record.  Indeed, the fundamental

20   purpose of recordation is to protect the rights of bona fide

21   purchasers.  It is not generally intended to otherwise affect

22   the property rights.

23             One moment, Your Honor.

24             THE COURT:  Okay.  But the argument is that they

25   didn't record the deed, they've done something improper.  But

1    now you've just quoted me law which says it's really intended

2    to affect the bona fide purchaser which we don't have here.  So

3    if they don't record, what's the legal impact other than it

4    doesn't protect the bona fide purchaser?  And how does that

5    advance your argument?

6            MS. ALPER:  One moment, Your Honor.

7            Your Honor, so even if you consider this a pocket deed

8    if Judge Teal has stated that, it still is an asset that has

9    been transferred out of the estate.

10           THE COURT:  Well, I think you misunderstood my

11   question because I don't -- there's no allegation here that a

12   deed even exists or that they have one.  I think the allegation

13   is they should have had one and they should have recorded one.

14   But my question was, you know, Judge Teal had said even if they

15   hadn't, that that doesn't affect certain rights.  But I'm not

16   sure we've even gotten to that point in this case.  I was just

17   trying to run that down.  So I don't want to mistake what my

18   question was.

19           MS. ALPER:  Thank you, Your Honor.  So, Your Honor,

20   under basic black letter real property law as set forth in

21   Restatement the third of Property Law, in the District of

22   Columbia's real property laws, by foreclosing on the property,

23   the secured creditor extinguished the Debtor's rights, title,

24   and interest in the property.  And now the secured creditor

25   holds those rights, title, and interest in the property.  As

1    the Ninth Circuit stated in In re Lemco Gypsum -- I'll just

2    cite -- 910 F.2d 784, when property sold with the approval of

3    the court, the buyer acquires title clear of all claims and

4    bankruptcy.  Such property may not be hauled back into the

5    estate.  The fact that property was once owned by a bankrupt

6    does not supply federal jurisdiction of all future disputes

7    concerning the property.  The issue presented by the secured

8    creditor's adversary proceeding constitutes a dispute between

9    two parties, the secured creditor and the District, who are

10   nondebtor parties in this adversary proceeding and in the main

11   bankruptcy case.  The property does not involve the debtor or

12   the administration of the estate.  And indeed --

13            THE COURT:  That's only true if there's actually been

14   a transfer of the ownership, though, right?  I mean, because

15   what Gypsum was dealing with is a 363 sale where the sale and

16   the transfer was approved by the court, and then there were

17   later issues that were brought -- attempted to be brought back

18   to the court under a retention of jurisdiction statute.

19            I mean, this wasn't a court-approved sale.  The only

20   order was that the Court authorized the execution of rights

21   under District of Columbia law which gets us back to the

22   question of what was the impact of the auction without the

23   furtherance of the execution of a deed and recordation thereof.

24   So I'm not sure Gypsum is all that helpful because I didn't

25   authorize a sale here.



1          MS. ALPER:  Your Honor, what the order said is that

2     you authorize the secured creditor to, quote, pursue any and

3     all remedies against the property and its improvements.  And

4     what the secured creditor --

5          THE COURT:  Correct.  But that doesn't mean they had

6     to, right?  What it does, it says if you if you do this, then

7     you're not violating the automatic stay.

8          MS. ALPER:  But what the --

9          THE COURT:  It doesn't mean that I adjudicated whether

10     or not they have or whether what the impact of that would be.

11          MS. ALPER:  The secured creditor is asserting that it

12     has legal title, legal interest in the property.  And again, so

13     the secured creditor states it has a literal legal interest in

14     the property and therefore a cognizable interest in the

15     property.  So it is the secured creditor's assertion that it

16     does have legal interest in the property.

17          THE COURT:  Right.

18          MS. ALPER:  And is --

19          THE COURT:  Let's discuss the difference between legal

20     interest and legal title.  Is there a difference between legal

21     interest and legal title when it comes to jurisdiction

22     questions?  Because I think their argument is we have an

23     interest because we -- first of all, we're a secured creditor.

24     And they were at all times -- they had a secured lien that

25     hasn't been disputed.  That was the basis for the relief from

1    stay.  But an interest is not -- I mean, that's why the

2    Bankruptcy Code says liens, claims, interests, encumbrances,

3    and owners.  There's different standards.  So are you -- is the

4    argument of the District that the legal interest is the same as

5    legal title or that they should be treated the same?

6         MS. ALPER:  The District's position is that it has --

7    that the secured creditor has legal title in the property and

8    that the fact that recordation did not occur does not affect

9    the property right that the secured creditor has in the

10   property.

11        THE COURT:  All right.  You said you were going to

12   come back to my question of the difference between an auction,

13   when and after an auction is that title transferred.  You said

14   you were coming back to that point, so I'm going to let you

15   proceed.  Go ahead.

16        MS. ALPER:  I'm not sure I understand the question.

17   Sorry.

18        THE COURT:  So my question is, you keep using the word

19   "foreclosure."  But there are many types of foreclosure within

20   the District of Columbia law, one of which is a nonjudicial

21   auction which is what happened here.  My question was there was

22   an auction, but there's yet to be execution of a deed or

23   recordation of a deed.  That's what's alleged in the complaint

24   which I take all factual allegations of the complaint alleged

25   as true in favor of the nonmoving party on this motion.  And so

1    the question I had is, is the auction itself the operative

2    moment when the District recognizes a change in ownership, or

3    is the auction establishing the price, who is the highest

4    bidder?  And yet the auction winner accepts the risk of not

5    docketing a deed immediately if they don't do that immediately

6    following the auction.  But it isn't until the deed is recorded

7    that the legal title transfers.  So essentially, after the

8    auction, the winning bidder would have an equitable interest,

9    but the legal title would not transfer until recordation of the

10    deed.  Or does District of Columbia law modify that saying that

11    nonetheless, title transfers in some way without the

12    recordation of the deed after the completion of the auction?

13         I think that hat is -- there's a term foreclosure

14    which you keep using, and I'm trying to dig down into the steps

15    and details of when in your argument and how that -- I think

16    there's more that needs to be understood under the word

17    "foreclosure."

18         MS. ALPER:  Your Honor, the secured creditor has

19    asserted a legal interest in this property.  And recordation is

20    not required to hold such an interest.  The purpose of

21    recreation, again, under DC law is to provide notice that --

22    sorry, I'm going to read this -- against subsequent bona fide

23    purchasers and to protect the property interest of the title

24    holder.  And it is -- again, quoting from this case, Rose v.

25    Wells Fargo Bank, which was issued by the District of Columbia

1    Court of Appeals, the highest court in the District of

2    Columbia.  It is not generally intended -- the recordation

3    requirement is not generally intended to otherwise affect

4    property rights.

5            So Your Honor, as the -- again, as the Ninth Circuit

6    stated in In re Lemco Gypsum, this dispute is about rights

7    incident to the ownership of real property, a question of state

8    law.  Such disputes should be decided by a state court.  State

9    law supplies the rule of decision for disputes concerning

10   property transferred -- sorry, Your Honor.  If I may just get a

11   quick little drink here.

12           THE COURT:  Go ahead.

13           MS. ALPER:  And as the Bankruptcy Court stated in In

14   re Perez, That's 2019 Bankr. LEXIS 3462, Bankruptcy Courts do

15   not have jurisdiction over disputes between nondebtor parties

16   where the dispute does not involve property of the estate, does

17   not affect administration of the estate, or will not affect

18   recovery of creditors under a confirmed plan.

19           And, Your Honor, the Chapter 7 Trustee filed his final

20   accounting report yesterday actually noting the abandonment of

21   the property.  So in the --

22           THE COURT:  So if -- but isn't that contrary though?

23   Again, for purposes of discussion, if he's claiming

24   abandonment, wouldn't that mean he believes that the estate had

25   an interest in the property up until the date of abandonment,

1  meaning at the requisite time relevant in the suit?

2         MS. ALPER:  Well, it could be --

3         THE COURT:  Because if it truly had been removed from

4  the estate by the foreclosure, he would not have any interest

5  and he wouldn't have anything to abandon, would he not?

6         MS. ALPER:  Well, I presumed that this is a summary of

7  what happened in the bankruptcy case and that the trustee is

8  stating that the estate does not have an interest in the

9  property, period.

10         THE COURT:  Well, that's different than abandonment

11  though.  Because if the estate had no interest, then he

12  wouldn't need to abandon it.

13         MS. ALPER:  Well, I believe that this is a summary of

14  what happened, Your Honor.

15         THE COURT:  All right.  I haven't reviewed it yet.  So

16  go ahead.

17         MS. ALPER:  Okay.  So again, Your Honor, I'm losing my

18  place a little bit.  But In re Perez, Bankruptcy Courts do not

19  have jurisdiction over disputes between nondebtor parties where

20  the dispute does not involve property of the estate, does not

21  affect administration of these estate, or will not affect the

22  recovery of creditors under confirmed plan.  And accordingly,

23  this honorable court does not have jurisdiction over the

24  secured creditor's dispute primarily set forth in the adversary

25  proceeding against the District involving the change in the



1   property's tax classification that occurred three years ago at

2   the same time that the secured creditor foreclosed on the

3   property.

4         And should the secured creditor wish to contest the

5   real property taxes assessed against the property, there are

6   statutory provisions in District of Columbia law to follow.

7   And as set forth in the District's response to the secured

8   creditor's opposition, the District has a detailed statutory

9   scheme to challenge determinations that a real property is a

10  class 3 or class 4.  That would be vacant or vacant and

11  blighted.  And this process, Your Honor, is mandatory under

12  District law may not be circumvented through any other

13  provision of law.

14        In conclusion, Your Honor, this Court -- well, let me

15  just add one other thing, one other issue, and that is that the

16  District also does not believe that the secured creditor would

17  have standing to pursue an objection to the change in

18  classification as a violation of the automatic stay.  And if

19  Your Honor wishes more discussion on that, I will provide it.

20  But basically, I believe that this is a jurisdictional issue

21  before this Court.  And that accordingly, the adversary

22  proceedings should be dismissed with prejudice.  Thank you,

23  Your Honor.

24        THE COURT:  All right.  Thank you.

25        MR. VerStanding, are you ready?



1          MR. VERSTANDIG:  Yes, Your Honor.

2          THE COURT:  Go ahead.

3          MR. VERSTANDIG:  Thank you, Your Honor.  Maurice

4    VerStandig on behalf of DP Capital, LLC.

5          As is probably evident from the background, I'm in a

6    Las Vegas hotel room.  There is bad wallpaper and a shoddy

7    headboard behind me.  And I have a legal interest in this hotel

8    room because I paid the overnight lodging rate.  I'm permitted

9    to stay here until 4 p.m. tomorrow.  That doesn't mean I own

10   the hotel room.  That doesn't mean I can go record a deed in

11   Clark County, Nevada.  That doesn't mean I own the property.

12   But it does mean going back to sort of 1L property that I have

13   a legal interest, just as a tenant under a lease has a legal

14   interest, the holder of an easement has a legal interest, the

15   holder of a license has a legal interest, and most importantly

16   for this case, the secured party under a deed of trust has a

17   legal interest.

18          A legal interest ought not be conflated with fee

19   simple ownership.  And that is essential.  It is not the same

20   thing as having title to an asset.  There is no deed in this

21   case.  And that is something we dealt with back when Mr.

22   Davison was making arguments on behalf of the originally

23   debtor-in-possession and then various entities that popped up

24   throughout this case.  There has always been this assumption

25   that as soon as a foreclosure is over, a deed is signed.  And I

1   think the Court picked up on this based on one of the questions

2   posed to Ms. Alper.  There is no allegation in this case that

3   deed has ever been executed, which means from a hyper-technical

4   point of view, the thirty day clock is not running.  That said,

5   even if it was, I believe that is punishable by a fine not to

6   exceed $200.  But more pragmatically, the trustee under the

7   deed of trust has not executed a deed conveying the asset to DP

8   Capital.

9           Now, there are lots of reasons why the execution of a

10   deed is important.  You have a foreclosure auction which goes

11   to the process you're asking about, but it's what happens

12   thereafter that is important.  Let's assume that it wasn't a

13   secured creditor who was the high bidder at an auction.

14   Foreclosure auctions are open to the public.  That's very much

15   the point.  Someone shows up, they put down the earnest money

16   deposit.  They bring certified funds of however many hundred

17   thousand dollars, and they are then obligated to go close with

18   the trustee within thirty days.  Is the District of Columbia

19   saying that as soon as the auctioneer's gavel falls, they own

20   the property even though no deed has been signed by the trustee

21   to them and even though they have not yet come up with the rest

22   of the money?  That cannot possibly be the case.

23           There are also examples, albeit relatively rare ones,

24   where the high bidder in a foreclosure auction will be a

25   secured creditor but will ultimately elect to not close.  This



1    Court saw that tangentially, it wasn't really in front of the

2    Court, in the Baltimore Harlem Park investment case where the

3    debtor was the secured creditor on, I believe, thirty-some-odd

4    properties in Baltimore City.  One of those properties went to

5    foreclosure auction.  The debtor bid it in.  And before

6    executing, let alone recording a deed, the debtor came to

7    appreciate that the quantity of lead paint in that property was

8    such that the property was a liability, not an asset.  No one

9    wants to own it.  It's toxic, literally and figuratively.  So

10   the debtor made a cognitive decision to not record the deed and

11   to let the deed of trust ultimately lapse with, I believe, a

12   tax certificate foreclosure down the road.

13        So there is a very meaningful distinction under

14   District of Columbia law and under real property law as we know

15   it in this country between being the high bidder at an auction

16   and actually having a deed executed in favor of a party.  If we

17   get to that distinction, then the pocket deed question comes

18   up.  But since there is no allegation that there is a deed in

19   this case, I don't know that we even need to reach the question

20   of Judge Teal's holding on the impact, or lack thereof, of the

21   pocket deed.

22        I also want to point out that my client has standing

23   without regard to any of this.  My client has standing for a

24   much more simple reason.  You signed an order giving my client

25   standing.  As part of the settlement with the trustee, which is



1   found at docket entry 344, Section 4 thereof says that my

2   client is going to indemnify the state for all tax liabilities

3   related to the real property at 2207 Foxhall Road.  And that

4   settlement agreement, after a very much contested hearing, was

5   approved.  And there's an order confirming it at Section 358.

6   The settlement agreement in Section 6 thereof also contains a

7   retention of jurisdiction even after the closure of the case.

8        So my client is obligated under an order of this Court

9   to indemnify the trustee and the estate for any real property

10   taxes that have accrued at any point in time.  That would

11   include prior to the commencement of this case, following the

12   commencement of this case but pre foreclosure auction, post

13   foreclosure auction but pre today.  That certainly gives my

14   client prudential standing.  That certainly gives my client

15   real standing under just about any Article 3 analysis that is

16   out there.  I think my client also has standing by virtue of

17   being the secured creditor on the deed of trust and by being

18   the high bidder at the auction.  But if you put those three

19   together, it is difficult to see where my client doesn't have

20   standing.

21        So, Your Honor, we've asserted three causes of action.

22   We believe that each have merit.  The District of Columbia

23   hasn't really challenged the causes of action.  They've

24   challenged my client's standing.  And initially they challenged

25   the propriety of service of process.  But based on the reply



1    brief, it doesn't appear they're hewing to that argument.

2           So we would respectfully urge the motion be denied and

3    this case proceed to a Rule 26 conference.

4           THE COURT:   Ms. Alper briefly referenced arguments as

5    to the relief requested with respect to the -- I think it's the

6    count as to the declaratory judgment on whether or not the

7    action violated the stay and standing on that.  I've reviewed

8    the briefs.  Just before I returned to her, is there anything

9    further you want to add in addition to the brief on that point?

10           MR. VERSTANDIG:  Your Honor, I don't know that I'd add

11    anything, but I'd accentuate this point.  There seems to be

12    this argument that wasn't too prominent in the reply but

13    certainly there in the motion that only the trustee or a

14    debtor-in-possession in the Chapter 11 portion of this case

15    would have had standing to bring a 505 claim or an argument as

16    to a violation of the automatic stay.  Section 505 says the

17    court may.  And that's notable because if you look at other

18    provisions of Chapter 5, 547, 548, 550, it very clearly says

19    the trustee.  Congress set forth certain things that only a

20    trustee can do.  Section 505 is not one of those, inclusio

21    unius est exclusio alterius, by clearly delineating in other

22    portions of Chapter 5 that only the Trustee may exercise

23    certain rights that is to the necessary exclusion of the

24    Trustee being the sole party-in-interest. for Section 505.

25           With regard to the automatic stay, I think it's



1    actually much easier.  There is ample case law that says any

2    party-in-interest, i.e. someone who meets the Article 3 and

3    prudential standing analysis, may bring a claim premised on the

4    automatic stay.

5        And I want to be clear.  We're not suing the District

6    for monetary damages.  I do think that would peculiarly and

7    idiosyncratically belong to the trustee.  We are not seeking

8    punitive damages for violating the stay.  We're not seeking

9    actual monetary damages.  We are rather seeking a declaratory

10   judgment as to whether or not the stay was violated, because

11   under this Court's precedent, I don't remember the case

12   offhand, but I believe you affirmed this holding all of a few

13   months ago, an action in contravention of the automatic stay is

14   not voidable but void.  So if the District has done things in

15   contravention of the automatic stay, we need certainty and

16   clarity as to that because it impacts whether or not they have

17   actually occurred.  So I believe we have standing there.  I

18   believe we have standing under 505.

19       With regard to Barton, there is no statutory or really

20   case law centric analysis one way or another.  So I would argue

21   that we resort to the generic Article 3 inquiry, which is are

22   we within the zone of interest and is there a case or

23   controversy.  And those are both clearly answered in the

24   affirmative.

25       THE COURT:  All right.  Thank you.



1         MR. VERSTANDIG:  Thank you, Your Honor.

2         THE COURT:  Anything further?

3         MR. VERSTANDIG:  Not from DP Capital, Your Honor.

4         THE COURT:  All right.  Thank you,

5         Ms. Alper, any reply?

6         MS. ALPER:  Yes, Your Honor.  Pardon me.  Regarding

7    the standing which was the main thrust of the motion to

8    dismiss, the Debtor, the debtor-in-possession, and the Trustee,

9    all of which have been present in this case, Your Honor, have

10   the standing to pursue an action regarding whether a violation

11   of the automatic stay occurred, not the secured creditor.  And

12   I believe that the secured creditor is -- or with all due

13   respect, is muddying the water a little bit here.

14        THE COURT:  Well, isn't that -- I mean, are you

15   conflating standing under 362(k) with standing under a more

16   general request?  Because this is a request not under 362(k)

17   but under declaratory judgment.  So not asking for damages

18   related to the stay which are statutory and which are limited,

19   but on a more general basis for determination whether or not an

20   action occurred which is not limited by the language of 362(k).

21        MS. ALPER:  One moment, Your Honor.

22        THE COURT:  Take your time, Ms. Alper.  If you need

23   water or whatever, that's fine.

24        MS. ALPER:  Thank you, Your Honor.

25        So, Your Honor, there is an argument that by the



1    Districts changing the tax classification, which I might add,

2    there was no collection of actual money, that the tax

3    classification system, the District law has falls within the

4    governmental unit exception of the regulatory police --

5    regulatory and police power of the District because the purpose

6    of the tax classifications 3, which is vacant --

7            THE COURT:  Bud doesn't that -- wouldn't that be a

8    defense to the declaratory judgment action and not a basis for

9    which the Court to dismiss the action itself?

10           MS. ALPER:  Yes, Your Honor, it would.  It would be a

11   defense.  But it does fall -- there is a purpose for those tax

12   classifications where you have a blighted, vacant property.

13   The reason that such a property is classified as for is to

14   encourage the owner to make the necessary repairs to take it

15   out of that tax classification so that it does fall within

16   arguably if we get past all of these other arguments --

17           THE COURT:  Right.  And so, I mean, I would expect

18   that we would see -- I would see a police and regulatory

19   exception defense or even maybe a summary judgment motion

20   stating that there is no possible set of facts under which the

21   DP capital could succeed on at least the stay issue because

22   it's a allowed exception.  But for motion to dismiss, I have to

23   determine whether -- I think this is a 362(b)(1) motion

24   essentially that whether or not there's standing and whether or

25   not I have jurisdiction over the claims.  That raises a -- that

1    raises a question of law which is a separate and distinct

2    consideration.  And I'm confident you're not asking me to look

3    at a motion for summary judgment now on the issue since you'd

4    like to retain and bring that in a more fulsome sense later on

5    if I don't dismiss the case.

6           MS. ALPER:  That's correct, Your Honor.

7           THE COURT:  All right.

8           MS. ALPER:  Thank you, Your Honor.

9           THE COURT:  No problem.  So, I mean, really the

10   question is whether or not the three causes of action are --

11   there is standing of the Plaintiff to bring what is essentially

12   three versions of different -- one is a declaratory judgment

13   action.  One is, again, a second -- they're all semi -- they're

14   all different forms of declaratory judgment.  They're not --

15   again, not seeking monetary damages, simply essentially asking

16   me to call balls and strikes as to what is or what is not and

17   what's the status and what their tax exposure might be as a

18   result of their obligations under the settlement agreement.

19          MS. ALPER:  Yes.  Your Honor, we believe first that

20   this Honorable Court -- it always makes me feel a little bit

21   uncomfortable -- does not have jurisdiction based on what we

22   assert that the property is the legal interest of the secured

23   creditor and not the Debtor, and then 2, that the --

24          THE COURT:  So let's go through that one first.  And I

25   keep cutting you off, but I want to go through that one first.



1    So even if I accept your proposition that the legal

2    title transferred at the conclusion of the option, which you

3    think is where we're kind of at at the moment.  Mr. VerStandig

4    raised in his argument that, nonetheless, there is an

5    indemnification obligation of his client to the estate for

6    taxes at all times, essentially up through today.  And

7    therefore, they would -- they have an interest in determining

8    what those taxes should or should not be.

9    So even if I accept the proposition that the title

10   transferred, what about the obligation pursuant to the

11   settlement agreement and the -- that was referenced?  How does

12   that impact your argument with respect to their standing on

13   that question?

14        MS. ALPER:  Well, Your Honor, we -- the District

15   believes that the secured creditor did not have standing to

16   bring that issue, that it did belong to the Debtor, the debtor-

17   in-possession, and the trustee.

18        THE COURT:  But if there is an indemnification

19   obligation to those parties for those amounts, does that not

20   confer upon them a case or controversy or a cognizable interest

21   in the amount of the -- determining the amount of the taxes?

22        MS. ALPER:  When you say they, Your Honor --

23        THE COURT:  I'm sorry, the secured creditor.  The

24   settlement agreement approved by this Court, again, after a

25   number of days of testimony I think -- there were a lot of



1    testimony in this -- in that case.  And if I'm conflating how

2    long one hearing took, please don't hold me to that.  But was

3    that there wasn't incurred -- as part of the settlement, DP

4    Capital has an obligation to indemnify for the amounts of the

5    taxes that are owed.  Would that not give them a legal interest

6    in the amount of the taxes that are charged as to the property?

7            MS. ALPER:  Your Honor, there are -- first of all,

8    Your Honor, then we get into the issue of whether the automatic

9    stay -- whether the tax classification that the District

10   changed falls within the exception of the governmental union.

11           THE COURT:  Well, so I mean, I think by going there,

12   it almost recognizes that there is standing to challenge it,

13   but there may be defenses to their claims with respect to it.

14           MS. ALPER:  Well, Your Honor, I think first you have

15   to get -- to determine whether there is standing of -- that the

16   secured creditor has.  And we -- and the District is arguing

17   that -- again, that the secured creditor does not have standing

18   under the law.

19           THE COURT:  All right.  So no jurisdiction.  And I cut

20   you off between number 1 which is no jurisdiction.  What was

21   number 2?

22           MS. ALPER:  That standing issue.

23           THE COURT:  All right.  Anything further?

24           MS. ALPER:  No, Your Honor.

25           THE COURT:  I'm going take just a brief minute to talk



```
 1    to my law clerks, and we'll be back.  We'll be in brief recess.

 2              MS. ALPER:  Thank you.

 3              THE COURT:  Thank you.

 4              MR. VERSTANDIG:  Thank you, Your Honor.

 5              THE CLERK:  Thank you, Judge.  This court will stay in

 6    a brief recess.

 7          (Recess 11:24 A.M./Reconvene 11:35 A.M.)

 8              THE CLERK:  This court is again in session.

 9              THE COURT:  All right.  Thank you.

10              MS. ALPER:  Your Honor --

11              THE COURT:  Go ahead, Ms. Alper.

12              MS. ALPER:  I apologize here.  But it has just come to

13    my attention with regard to challenges of tax classification

14    that under 42-3131.15 of the DC Official Code, that it is only

15    the owner that may challenge the tax classification.  And then

16    under DC Official Code Section 42-3131.05, owner is defined as

17    one or more persons with an interest in real property in the

18    District of Columbia that appears in the real property tax

19    records of the Office of Tax and Revenue which would go to

20    standing issue, Your Honor.

21              THE COURT:  Okay.  Anything further?

22              MS. ALPER:  No, Your Honor.  No.  Thank you.

23              THE COURT:  Mr. VerStandig, I guess I didn't give you

24    an opportunity.  Anything from you?

25              MR. VERSTANDIG:  Your Honor, 505 supremacy clause.
```



1          THE COURT:  All right.  Thank you.

2          MR. VERSTANDIG:  Thank you.

3          THE COURT:  All right.  So the Court has before it the

4    motion to dismiss the complaint filed by DP Capital in this

5    adversary proceeding.  The adversary proceeding has a total of

6    three causes of action.  All three counts are requested

7    declaratory judgment from the Court.  None seek a monetary

8    recovery from the Court, although I guess allegedly you could

9    go there for the other and further relief as may be just

10   improper.  But as was raised in argument today, that's not the

11   essential focus of the litigation.

12         This motion is brought -- at least initially was

13   brought arguably under two sections of Rule 7012 of the Federal

14   Rules of Bankruptcy Procedure which incorporates Federal Rule

15   of Civil Procedure 12(b)(5) for inappropriate service of

16   process, although I think that that has been -- was

17   appropriately addressed in the responsive brief, the opposition

18   brief, and was not further argued in the reply brief or at

19   today's hearing.  The complaint was served via CMECF on the

20   District of Columbia as a party-in-interest and creditor in the

21   main case as well as was served via first-class mail, postage

22   prepaid to the appropriate parties, as indicated in the

23   Certificate of service that was a filed in this area, this

24   case, sorry, at docket number 3.  And so I don't find there's

25   sufficient argument under 12(b)(5) to dismiss the case to the

escribers
www.escribers.net | 800-257-0885

1    extent that that argument retained to be pursued.

2         The main thrust of the argument today was what was

3    under 12(b)(1) which is an argument for lack of jurisdiction of

4    the Court and, tangentially or relatedly, lack of standing of

5    the complainant to file the complaint.

6         This matter arises out of a well-known parcel of

7    property to the Court, which had gone through, as was indicated

8    by both the parties in their argument, a very long predicated

9    originally Chapter 11 procedure and then Chapter 7 case.  There

10   was -- DP Capital was very active in the main case.  The

11   District of Columbia was on notice and participated in various

12   hearings in that case although was not nearly the active

13   participant that DP Capital was.  And as noted, there was a

14   settlement motion approved by this Court by order in the main

15   case, which, while not alleged in the complaint per se, is part

16   of the record in the Court's -- in the court's case.  And I can

17   make reference to that when considering the motion to dismiss.

18        Motion to dismiss is -- takes all allegations pled in

19   the complaint as true and in the light most favorable to the

20   Nonmoving party in that case -- in this case, it is the

21   Plaintiff, sorry, I couldn't think of that word for some

22   reason -- the Plaintiff, DP Capital, as the motion is filed by

23   the District of Columbia.

24        The question is whether the Court has -- we'll first

25   address standing.  Court finds that DP Capital has standing to



1    bring this argument.  The focus on standing in some way focuses

2    on whether or not in the clear distinction between legal

3    interest and legal title, while all parties agree a foreclosure

4    auction was conducted, it is alleged that there has not been a

5    deed executed, nor has there been a deed recorded in favor of

6    the winning party at the auction.  The allegation would then be

7    more than sufficient to support standing of DP Capital solely

8    on that alone, as a creditor of the estate and that the

9    property remains property of the estate, notwithstanding the

10   noted document was filed yesterday by Office the United States

11   Trustee because there would be questions as to a time period

12   prior to that.  So that doesn't necessarily change the issue

13   with respect to the time frame up through the filing of that

14   pleading.

15          Furthermore, there is the specific indemnification

16   obligations imposed upon DP Capital to the estate and/or the

17   Debtor as part of the settlement agreement, which specifically

18   called for and referenced the petition potential challenge to

19   the tax classification because of their obligation to make

20   those payments, including an obligation to pay any taxes due

21   upon the execution and recording of the deed, all of which

22   would confer standing to challenge the tax classification or

23   standing in the interest in the ultimate determination of the

24   tax classification.

25          And finally, as referenced in the opposition brief,



1   they are the secured creditor on the property.  And any tax

2   obligations would prime the value of their lien and would

3   create in some ways additional standing.  Although I think the

4   more appropriate -- the best finding of standing is that this

5   remains property of the estate, and DP Capital remains

6   obligated pursuant to a valid order of this Court with respect

7   to the property.  I did want to mention that there is some

8   additional information that could play into that.

9          With respect to whether the Court has subject matter

10  jurisdiction over the various causes of action, the property

11  does remain property of the estate which confers upon this

12  Court jurisdiction over the matter and finds that the property

13  was -- that the complaint alleges sufficient interest in the

14  property to survive a motion to dismiss.  Whether or not there

15  was an impact or whether the legal impact of the foreclosure

16  will == ultimately on a legal or upon the presentation of

17  admissible evidence, either on summary judgment or a trial

18  change that, as pled, the complaint pleads a valid cause of

19  action and interest in the property subject to give this Court

20  subject matter jurisdiction over the determination thereof.

21         Some of the arguments made today by the District,

22  including 362(b)(4)'s police and regulatory exception, and the

23  argument made just before the Court issued its ruling with

24  respect to the language in the DC code all go to -- are more

25  appropriately considered on a -- on either a summary judgment

1    motion or a trial with respect to the actual facts and

2    circumstances of the case.  And those would not play into the

3    Court's determination whether or not there is sufficient

4    subject matter jurisdiction to consider.  And I'll note this is

5    not a 12(b)(6) motion.  But I did use the language associated

6    with that, given that I have to kind of look at the complaint

7    pled as a whole when considering whether or not there is

8    subject matter jurisdiction and how the complaint lays out the

9    causes of action to establish the Court's subject matter

10   jurisdiction thereover.  The argument that only a debtor can

11   bring a 362(k) claim would be one if there was 362 being

12   sought.  That would be appropriate on a motion to dismiss if an

13   inappropriate party brought that, which is why the Court goes

14   to the various causes of action when looking at the subject

15   matter jurisdiction question.

16        But nonetheless, I find that the Court -- that DP

17   Capital does have standing to -- sufficient to bring the

18   complaint in the subject matter jurisdiction.  The Court

19   retains jurisdiction and questions over the property and the

20   complaint as pled sufficient to hear this case going forward

21   and will deny the motion to dismiss.

22        Mr. VerStandig, I'd look for an order from your office

23   stating that it's denied unless any party needs me to be more

24   fulsome in my legal analysis.  I reserve the right to

25   supplement that if an appeal is filed.  But nonetheless, I'll



1    take an order from your office with the right to supplement if

2    necessary upon the filing of an appeal.

3            And then, as a result of the denial of the motion to

4    dismiss, we do need to hold the scheduling conference in the

5    case with respect to discovery deadlines and scheduling a

6    further final pre-trial conference.

7            So with that, are the parties prepared to move forward

8    on scheduling today?

9            MR. VERSTANDIG:  Your Honor, I'm prepared to move

10   forward with the one caveat that I temporarily turn into a

11   pumpkin in about thirteen minutes.

12           THE COURT:  I think -- I'm hoping we can get it done

13   before then.  I do note that we still need to get an answer

14   filed, so we'll have to set that deadline as well.

15           But Ms. Alper, are you prepared to move forward on

16   scheduling?  Yeah, there you are.

17           MS. ALPER:  Yes, Your Honor.

18           THE COURT:  All right.  So we'll

19           MS. ALPER:  I will note -- just -- I'm sorry, Your

20   Honor -- just for the Court and Mr. VerStandig information that

21   I am out of the office all of August.  So it's fine to have a

22   scheduling -- fine to set forth a scheduling order, but we'll

23   probably go into September.

24           THE COURT:  That's fine.  Well, I mean, I think we can

25   set an answer deadline and we can set discovery out past that



1  time, so I think that would be fine for the Court.

2          MR. VERSTANDIG:  Your Honor, that's certainly fine.

3  In terms of the deadlines just to propose things, and we

4  respect however, the Court wishes to rule -- and candidly, none

5  of these are items on which I am particularly wed.  The rules

6  provide, I believe, for fourteen days for an answer after the

7  denial of a motion to dismiss.  If Ms. Alper with the District

8  would, like a couple of weeks from Friday, we're certainly not

9  going to pick over a few extra days.

10         MS. ALPER:  I appreciate that, Mr. VerStandig.

11         THE COURT:  So how about -- well, Ms. Alper, what he's

12  saying, either the 27th or even -- I guess that would be

13  fourteen plus two, sixteen days.

14         MR. VERSTANDIG:  I think the -- I think fourteen puts

15  us out the 2nd.  So --

16         THE COURT:  Right.  I'm looking at June 2025.  Sorry.

17  I'm the wrong --

18         MR. VERSTANDIG:  But the 5th or if we want to call

19  that a holiday weekend, the 8th is fine.

20         THE COURT:  I'm inclined to maybe even go to the 9th,

21  given the intervening holiday.

22         MR. VERSTANDIG:  That's fine.

23         MS. ALPER:  Actually --

24         THE COURT:  Answer by July 9th?

25         MS. ALPER:  That could we do July 12th?  It's just the



1   end of the week.

2          THE COURT:  I have no opposition to that.  But, Mr.

3   VerStandig, you're the Plaintiff.

4          MR. VERSTANDIG:  Your Honor, that is not a hill upon

5   which I plan to die.

6          THE COURT:  All right.  Answer by July 12th.  And then

7   we'll need to set a discovery deadline.

8          MR. VERSTANDIG:  Your Honor, being cognizant of the

9   August travel that was referenced and equally be cognizant that

10  we will be seeking probably a fairly heavy amount of discovery

11  from the District, I would suggest September 18th.

12         MS. ALPER:  September 18th what -- sorry, Mr.

13  VerStandig.

14         MR. VERSTANDIG:  Close of discovery.

15         THE COURT:  Well, that --

16         MS. ALPER:  Oh.

17         THE COURT:  She's gone the entire month of August, Mr.

18  VerStandig.  That would only give her --

19         MR. VERSTANDIG:  We can --

20         THE COURT:  I'm going to --

21         MR. VERSTANDIG:  -- do October.

22         THE COURT:  -- probably going to push that out to

23  October.

24         MS. ALPER:  Thank you, Your Honor.  I appreciate it.

25         MR. VERSTANDIG:  October 18th is a Friday.  That works



1    perfectly well.

2          THE COURT:  October 18th for the close of discovery.

3          MS. ALPER:  That would -- that's wonderful.  Thank

4    you.  Appreciate that.

5          MR. VERSTANDIG:  Expert designations.

6          THE COURT:  September 20th?  That would give everyone

7    four weeks to depose the expert if there's going to be one.

8          MR. VERSTANDIG:  That would work well for us, Your

9    Honor.

10          MS. ALPER:  October 20?

11          THE COURT:  No.  September 20 for the disclosure of

12    any experts which --

13          MS. ALPER:  Oh, okay.  Sorry.

14          THE COURT:  -- would be four weeks from that date to

15    depose them if necessary.

16          MS. ALPER:  Yeah.  Can you repeat that date again?  I

17    apologize.

18          THE COURT:  Friday, September 20th.

19          MS. ALPER:  Okay.

20          THE COURT:  All right.  So then we're probably looking

21    at a pretrial conference in November.

22          MR. VERSTANDIG:  I'm guessing dispositives November

23    1st.

24          THE COURT:  Well --

25          MS. ALPER:  Yeah, that's what I was going to ask.



1            THE COURT:  Yeah, that's fine.  November 1st for

2    dispositive motions, which means reply, response -- we have a

3    really late Thanksgiving this year which throws us into a

4    kerfuffle.  So --

5            MS. ALPER:  Oh my goodness.

6            THE COURT:  Yeah, it's a late one.  It is.  It's a

7    late.  So I'm -- based upon that, if we do -- I think we're

8    looking at either a December 4th or December 11th pretrial

9    conference and arguments on the -- unless motions are going to

10   take a particularly long time, we'll set something separate.

11   But to set a date would be the 4th or the 11th at this point.

12           MR. VERSTANDIG:  Your Honor, not surprisingly, I'm

13   free on both of those dates as of present.

14           MS. ALPER:  I think December 11th, given that people

15   might be traveling, et cetera, for Thanksgiving.  That is the

16   end of the -- oh my goodness.

17           THE COURT:  I know.  I'm fine with December 11th.

18           I'm actually probably speaking at a conference at or

19   around December 4th.  So we can -- that way we won't run into

20   any --

21           MS. ALPER:  So that's pretrial, Your Honor?

22           THE COURT:  Yeah.  It'll be pretrial in argument on

23   any motions.

24           MS. ALPER:  Okay.

25           THE COURT:  We'll set it for 12/11 at 10 for the


www.escribers.net  |  800-257-0885

1  pretrial.  And then obviously, if there's going to be argument,

2  well do that.

3        All right.  And then so if we have just -- if we have

4  expert designations -- do you all want a rebuttal expert

5  designation deadline or simply just have all expert

6  designations due on the 20th?

7        MR. VERSTANDIG:  Your Honor, our druthers would be to

8  not have a rebuttal deadline.  But again, not a hill on which

9  I'm going to die.

10       THE COURT:  Okay.  Ms. Alper, do you have a preference

11  one way or the other?

12       MS. ALPER:  I don't, Your Honor.

13       THE COURT:  All right.  I'll just leave it as a

14  general expert deadline.  If the parties have a need to request

15  a modification, they can always ask for such or agree to such.

16       All right.  So we've got an answer deadline of July

17  the 12th.  October 18th will be the close of discovery.  Expert

18  designations shall be due September the 20th, dispositive

19  motions November the 1st, and a pretrial plus and/or argument

20  on the motions December the 11th at 10.

21       MR. VERSTANDIG:  Thank you, Your Honor.

22       MS. ALPER:  Thank you.

23       THE COURT:  All right.  So Mr. VerStandig, we'll look

24  for that order on the motion to dismiss.  We'll issue a

25  scheduling order with these dates.  If you could put the answer



1    deadline in the motion to dismiss order, that would be helpful

2    for the Court.

3              MR. VERSTANDIG:  Yes, Your Honor.

4              MS. ALPER:  Your Honor?

5              THE COURT:  Yes.

6              MS. ALPER:  Just a thought.  Maybe just a rebuttal

7    expert designation by September 27th.

8              THE COURT:  I'm fine with that.

9              MR. VERSTANDIG:  That's fine.

10             THE COURT:  All right.  I think we've got all the

11   deadlines.  We'll issue that.  It'll continue to be a hybrid

12   model.  Obviously, trial will be in person, but even pretrial

13   will be hybrid.  We'll issue that order.  And I'll remind the

14   parties that there is a availability of -- I always encourage

15   parties to consider whether any form of alternative dispute

16   resolution, mediation, or otherwise might assist in the

17   process.  But in the interim we'll issue those orders.  And I

18   thank you both for your good arguments today.  And --

19             MS. ALPER:  Thank you so much, Your Honor.

20             THE COURT:  Have a nice federal holiday tomorrow.

21             MS. ALPER:  Thank you.

22             MR. VERSTANDIG:  Thank you, Your Honor.

23             MS. ALPER:  Thank you.  And I hope you had a nice

24   trip.

25             THE COURT:  Thank you.  Yes, ma'am.



1          MR. VERSTANDIG:  Thank you, Judge.

2          THE COURT:  Thank you.

3          MS. ALPER:  Thank you so much.

4          THE CLERK:  Thank you, Judge.  That concludes the

5     matters on our calendar for today.  This court stands in

6     adjournment.

7          (Whereupon, at 11:54 a.m., the hearing was adjourned.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


www.escribers.net  |  800-257-0885

I N D E X

RULINGS:                                        PAGE        LINE
Motion to dismiss is denied.                    33          21

escribers

www.escribers.net | 800-257-0885

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ _____          Date: June 26, 2024

ESCRIBERS LLC



www.escribers.net | 800-257-0885